**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**Woburn**

**Civil Docket#2581CV01818**

I, Lydia Fortune, Deputy Assistant Clerk of the Superior Court, Within and for said County of

Middlesex, do certify that the annexed papers are true copies made by photographic process of

pleadings in **2581CV01818** entered in the Superior Court on the **25**th day of **July** in the year of

our Lord 2025.

In testimony whereof, I hereunto set my hand and affix seal of said Middlesex Superior Court at

Woburn in said county, this **6**th day of **August**, in the year of our Lord **Two Thousand**

**Twenty- Five.**



Lydia Fortune
Deputy Assistant Clerk

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

**2581CV01818 Boucher, Robin L. et al vs. Merscorp Holdings, Inc. et al**

| | |
|---|---|
| **CASE TYPE:** Equitable Remedies | **FILE DATE:** 07/25/2025 |
| **ACTION CODE:** D03 | **CASE TRACK:** F - Fast Track |
| **DESCRIPTION:** Injunction | |
| **CASE DISPOSITION DATE:** 08/06/2025 | **CASE STATUS:** Closed |
| **CASE DISPOSITION:** Transferred to another Court | **STATUS DATE:** 08/06/2025 |
| **CASE JUDGE:** | **CASE SESSION:** Civil C Rm 740 |

| PARTIES |
|---|

| | |
|---|---|
| **Plaintiff**<br>Boucher, Cary D.<br>7 Fairbanks Lane<br>North Reading, MA 01864 | **Attorney**                                    **PROPER**<br>Pro Se<br>Massachusetts Bar<br>Added Date: 07/25/2025 |
| **Plaintiff**<br>Boucher, Robin L.<br>7 Fairbanks Lane<br>North Reading, MA 01864 | **Attorney**                                    **PROPER**<br>Pro Se<br>Massachusetts Bar<br>Added Date: 07/25/2025 |
| **Defendant**<br>Merscorp Holdings, Inc.<br>1818 Library Street Suite 300<br>Reston, VA 20190 | |
| **Defendant**<br>U.S. National Association as Trustee for The RMAC<br>Trust, Series 2017-B<br>60 Livingston Ave<br>Saint Paul, MN 55107 | **Private Counsel**                              678790<br>Casey A Sieck<br>Day Pitney LLP<br>Day Pitney LLP<br>One Federal St<br>29th Floor<br>Boston, MA 02110<br>Work Phone (617) 345-4751<br>Added Date: 08/07/2025 |



CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
Docket Report

| | FINANCIAL DETAILS | | | | |
|---|---|---|---|---|---|
| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
| 07/25/2025 | Civil Filing Fee (per Plaintiff)<br>Reverse Receipt: 82855 Date:<br>07/25/2025<br>Reverse by: 82990<br>Receipt Reversal Reason: NON<br>SUFFICIENT FUNDS-BAD CHECK<br>Reverse Amount: 240.00 | 240.00 | 240.00 | 0.00 | 0.00 |
| 07/25/2025 | Civil Security Fee (G.L. c. 262, § 4A)<br>Reverse Receipt: 82855 Date:<br>07/25/2025<br>Reverse by: 82990<br>Receipt Reversal Reason: NON<br>SUFFICIENT FUNDS-BAD CHECK<br>Reverse Amount: 20.00 | 20.00 | 20.00 | 0.00 | 0.00 |
| 07/25/2025 | Civil Surcharge (G.L. c. 262, § 4C)<br>Reverse Receipt: 82855 Date:<br>07/25/2025<br>Reverse by: 82990<br>Receipt Reversal Reason: NON<br>SUFFICIENT FUNDS-BAD CHECK<br>Reverse Amount: 15.00 | 15.00 | 15.00 | 0.00 | 0.00 |
| 07/25/2025 | Fee for Blank Summons or Writ<br>(except Writ of Habeas Corpus) MGL<br>262 sec 4b<br>Reverse Receipt: 82855 Date:<br>07/25/2025<br>Reverse by: 82990<br>Receipt Reversal Reason: NON<br>SUFFICIENT FUNDS-BAD CHECK<br>Reverse Amount: 10.00 | 10.00 | 10.00 | 0.00 | 0.00 |
| | **Total** | **285.00** | **285.00** | **0.00** | **0.00** |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| | | INFORMATIONAL DOCKET ENTRIES | |
|---|---|---|---|
| Date | Ref | Description | Judge |
| 07/25/2025 | | Attorney appearance<br>On this date Pro Se added for Plaintiff Robin L. Boucher | |
| 07/25/2025 | | Attorney appearance<br>On this date Pro Se added for Plaintiff Cary D. Boucher | |
| 07/25/2025 | | Case assigned to:<br>DCM Track F - Fast Track was added on 07/25/2025 | |
| 07/25/2025 | 1 | Original civil complaint filed.<br><br>Dated 7/25/25 S.O.N. to issue returnable 8/7/25 at 2:30 PM in Courtroom 740. (Kazanjian,J.) Copy given in hand. | |
| 07/25/2025 | 2 | Civil action cover sheet filed. | |
| 07/25/2025 | 3 | Plaintiffs(s) Robin L. Boucher, Cary D. Boucher's EX PARTE Motion for Injunctive Relief | |
| 07/25/2025 | 4 | Plaintiffs(s) Robin L. Boucher, Cary D. Boucher's EX PARTE, EMERGENCY Motion for a Temporary Restraining Order | |
| 07/25/2025 | | EDocument sent:<br>A Tracking Order was generated and sent to:<br>Plaintiff: Robin L. Boucher 7 Fairbanks Lane, North Reading, MA 01864<br>Plaintiff: Cary D. Boucher 7 Fairbanks Lane, North Reading, MA 01864 | |
| 07/25/2025 | 5 | General correspondence regarding email from Attorney Neil Boucher of Brock and Scott , informing the court that his client has instructed his office that the sale originally scheduled for 7/29/25 for the borrower and property has been cancelled and is not going forward. | |
| 07/25/2025 | 6 | Summons and order of notice issued on a Motion for a Preliminary Injunction , returnable on 08/07/2025 02:30 PM Hearing on Preliminary Injunction.<br><br>Judge: Kazanjian, Hon. Helene | Kazanjian |
| 08/04/2025 | | Financial Note:<br><br>Plaintiff notified of filing fee unpaid for INSF said that will be replaced tomorrow in person, no activities until further notice<br><br>Applies To: Boucher, Robin L. (Plaintiff) | |
| 08/06/2025 | | Attorney appearance<br>On this date Casey A Sieck, Esq. added as Private Counsel for Defendant U.S. National Association as Trustee for The RMAC Trust, Series 2017-B | |
| 08/06/2025 | 7 | Defendant U.S. National Association as Trustee for The RMAC Trust, Series 2017-B's Notice of<br>Filing of Notice of Removal | |
| 08/06/2025 | | REMOVED to the U.S. District Court | |
| 08/06/2025 | | Case transferred to another court. | |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| 08/07/2025 | Event Result:: Hearing on Preliminary Injunction scheduled on: 08/07/2025 02:30 PM<br>Has been: Canceled     For the following reason: Transferred to another session<br>Comments: Removed to US District Court.<br>Hon. Asha Z White, Presiding<br>Staff:<br>     Arthur T DeGuglielmo, Assistant Clerk Magistrate | White |

---

MIDDLESEX, SS.     *Commonwealth of Massachusetts*
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this 6th day of August 2025.

_____
Deputy Assistant Clerk

Page: 4

Cary D. Boucher, Robin L. Boucher
7 Fairbanks Lane
North Reading, Massachusetts
(978) 404-1479
rlboucher1966@gmail.com

## COMMONWEALTH OF MASSACHUSETTS

Woburn, SS.

Woburn Superior Court
Civil Action No. 25- 1818

|  |  |
| --- | --- |
| ROBIN L. BOUCHER and | ) |
| CARY D. BOUCHER, | ) |
| Plaintiffs, | ) |
| v. | ) |
|  | ) |
| MERSCORP HOLDINGS, Inc "MERS" | ) |
|  | ) |
| U.S. BANK NATIONAL ASSOCIATION, | ) |
| AS TRUSTEE FOR THE RMAC TRUST, | ) |
| SERIES 2017-B, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUL 25 2025

CLERK

## VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

### INTRODUCTION

This is an action seeking to enjoin the Defendant MERSCORP Holdings, Inc ("MERS") and US Bank National Association, As Trustee For The RMAC Trust, Series 2017-B (Trustee for 2017-B), from foreclosing on the Plaintiffs' primary residence located at 7 Fairbanks Lane in North Reading, Massachusetts (Primary Residence"). The foreclosure is scheduled for July 28, 2025 at 12:00. A copy of the Notice of Foreclosure is attached. The deed title owners of the property are the Plaintiffs Cary D. Boucher ("Cary") and Robin ("Robin") Boucher. The property is the sole residence for the plaintiffs and their family.

The foreclosure auction should be enjoined as the Defendants are violating the law by attempting to initiate the Massachusetts non-judicial foreclosure scheme strictly construed pursuant to General Law - Part II, title 1, Chapter 183, § 21 in accordance with the Statutory Power of Sale. Because the Defendant is not permitted to initiate a nonjudicial sale when:

a.  Plaintiffs did not sign the note, only Cary's signature appears on the note,
b.  Plaintiffs are not in default to Defendants,
c.  the Defendants do not have any debt they are pursuing,
d.  the mortgage and the debt are no longer together with entitlement to force the note, and therefore no entitlement to enforce the mortgage
e.  Defendants are not listed on the Notice of Default,
f.  Defendants are not listed on the Notice of Sale,
g.  Defendants have no legal basis to sell the property, and
h.  Defendants have no standing to enforce a Mortgage where the Power of Sale Is Void.

## JURISDICTION AND VENUE

1. This is an action for equitable relief within the jurisdiction of this Middlesex County Superior Court.

2. Venue is proper as the premises is located in Middlesex County, Plaintiffs are residents in Middlesex County and Defendants engage in business in Middlesex County for the courthouse at 200 Trade Center Drive, 2nd Floor, Woburn, MA 01801

## PARTIES

3. The Plaintiff, Cary D. Boucher ("Cary") is an individual currently residing at 7 Fairbanks Lane in North Reading, Massachusetts (Primary Residence").

4. The Plaintiff, Robin L. Boucher ("Cary") is an individual currently residing at 7 Fairbanks Lane in North Reading, Massachusetts (Primary Residence").

5. The Defendant MERSCORP Holdings, Inc ("MERS") is located at1818 Library St, Suite 300, Reston, VA, 20190, and upon information and belief currently does business in Massachusetts.

6. The Defendant US Bank National Association, As Trustee for The RMAC Trust, Series 2017-B (Trustee for 2017-B), 60 Livingston Avenue, EP-MN-WS3D, St Paul, MN 55107 and upon information and belief currently does business in Massachusetts.

## FACTUAL ALLEGATIONS

7. On July 28, 2008, a note with a signature of a person using the name of Plaintiff, Cary D. Boucher was created in favor of National Future Mortgage, Inc. with a payment amount of $245,000.

8. There are no other borrowers names on the "NOTE" and no other parties could have received any funding from this note and no other parties can be held personally responsible for the prepayment of this note when funded.

9. Upon information and belief, from the records recorded in the county of Middlesex, at the time of the underwriting and funding of this note, the monthly payments were insured by the Federal National Mortgage Association ("FNMA").

10. At no time did the Plaintiffs make any repayments towards this note herein.

11. As no payments were ever made by the Plaintiffs, this note's repayment became uncollectible by June 28, 2013, and forever time-barred for collection of this debt in accordance with the Massachusetts Statute of Limitations for written contracts M.G.L. c 260 § 2.

12. There is no endorsement on the note transferring the note to a new owner.

13. An endorsement appears on an Allonge to the note along with an incomplete and undated unlawful endorsement by a company that identifies itself as AmTrust Bank formerly known as Ohio Savings Bank, an unusual and uncommon form of identification which is not found in the licensing records.

14. AmTrust Bank was shut down by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation and AmTrust Bank's deposits were incorporated into the deposits of New York Community Bank (no assets or Promissory Notes).

15. As an incident to the note, a mortgage was also created with the signature of a person using the name of Plaintiff, Cary D. Boucher naming Mortgage Electronic Systems, Inc "MERS") as the beneficiary, its successors and assigns, and the nominee for the Lender named on the note as National Future Mortgage, Inc.

16. At this time U.S. Bank National Association, as Trustee for the RMAC Trust, Series 2016-CTT, claiming to be a successor in interest to Mortgage Electronic Registration Systems, Inc as nominee for Nation Future Mortgage Inc, had attempted to initiate a nonjudicial foreclosure of this property.

17. Based on litigation in other jurisdiction, it has been ruled and proven that U.S. Bank National Association, as Trustee for the RMAC Trust, Series 2016-CTT, never had any standing to foreclose on any property in the United States. Therefore, there are no rights that can be passed on to any other "successors or assigns" from U.S. Bank National Association, as Trustee for the RMAC Trust, Series 2016-CTT, included the defendants in this case.

18. U.S. Bank National Association, as Trustee for the RMAC Trust, Series 2017-B has no standing, no authority and rights to foreclose on this property and must be enjoined from acting upon a nonjudicial foreclosure.

## COUNT 1: Declaratory Judgment

19. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 18.

20. The deed title owners of the property are Cary and Robin. They have owned this property since February 5, 2003.

21. Robin is not now and never has been a borrower on the 2008 note and has no unpaid obligation to the Defendants for a debt on the note.

22. Robin is not responsible for her spouse's personal, *in persona* debts.

23. Robin has no debt associated with the 2008 mortgage and has no mortgage obligation at this time.

24. The note and mortgage do not match, are not attached to each other, and do not have a common party entitled to enforce the note and mortgage at this time, therefore, the power of sale cannot be triggered by a default of the debt herein by Plaintiffs.

25. Upon information and belief, from the records recorded in the county of Middlesex, at the time of the underwriting and funding of this note, the monthly payments were insured by the Federal National Mortgage Association ("FNMA").

26. At no time did the Plaintiffs make any repayments towards this note herein.

27. As no payments were ever made by the Plaintiffs, this note's repayment became uncollectible by June 28, 2013, and forever time-barred for collection of this debt in accordance with the Massachusetts Statute of Limitations for written contracts M.G.L. c 260 § 2.

28. There is no and can be no foreclosure of a mortgage to repay a debt that is uncollectible at this time.

29. The debt was insured against non-payment. In 2018 FNMA as insurer paid off the debt and publicly sold that subrogated debt entitlement in an auction and the winner of the bid for including this subrogated debt was **Elkhorn Depositor LLC** on April 24, 2018. See Exhibit E.

30. The announcement was memorialized on a May 17, 2018 Assignment of the Mortgage, indicating on the document that it was ONLY a mortgage assignment and that there was no debt being assigned at that time. Massachusetts, as all states, has adopted the ruling held in MERS, in *Montgomery County, PA. v. MERSCORP, Inc*, USD, E.D. Penn, (2014) 16 F.Supp.3d 542, *"Where mortgaged premises are pledged as security for **debt**, the note and mortgage are inseparable; thus, an assignment of the note carries the mortgage with it, while an assignment of the latter alone is a **nullity**."*

31. With the Note, the debt, no longer collectible and having no debt at all for Plaintiff Robin, the security interest the mortgage seeks to secure is invalid. It is an undisputed fact, as in *Deutsche Bank Nat. Trust Co. v. Fitchburg Capital, LLC*, 471 Mass. 248

(2015) emphasizing that a mortgage depends on the underlying debt for its enforceability, and the mortgage does not have a binding effect that survives its underlying obligation and Defendants have no debt to claim.

32. Although it appears an endorsement Allonge was initiated, it was never completed. It is important to note that AmTrust Bank, a separate entity, was closed by the Office of Thrift Supervision in 2009 and ONLY its deposits transferred to New York Community Bank (no assets or Promissory Notes).

33. After having received only deposits transferred from AmTrust Bank to New York Community Bank an assignment of the Mortgage, WITHOUT THE DEBT, appeared recorded on 6/7/2011 in the Middlesex County Records for an assignment on 5/25/2011 to Nationstar Mortgage, LLC which in accordance with the Massachusetts statutes is a VOID assignment on its face - *Montgomery County, PA. v. MERSCORP, Inc, (supra)*. No assignee can ever receive any rights based on subsequent transfers that are associated with and property to occur after this VOID transfer.

34. Even before a sale or transfer of the subrogated debt and the transfer or assignment of a mortgage herein could take place, the party claiming rights had none. See- *U.S. Bank National Association as Trustee for RMAC Trust, Series 2016-CTT v. Desrosiers,* USD Court, E.D. New York CV 17-7338 (AKT) 3/31/2021 proves Series 2016-CTT and Trustee U.S. Bank had no authority to enforce (or to use the courts for recovery) and therefore could never pass on any authority even if they assigned or sold the mortgage. Exhibit H - the case.

35. Plaintiffs received notice of the sale of the subrogated debt from Series 2016-CTT to Trustee for 2017-B on March 4, 2024. (see Exhibit F) This notice declares that U. S. Bank, N.A. Trustee of Series 2016-CTT has no authority or rights after the transfer of the subrogated debt herein is no longer an asset of this entity.

36. After the sale of the subrogated debt from 2016-CTT to Trustee for 2017-B, a notice of default from 2016-CTT, who did not hold entitlement to the debt, was sent to Plaintiffs

on July 28, 2025. This notice of default is without legal effect and any sale of the property that occurs from this notice must be considered legally void.

37. Subsequently, a notice of sale was issued by the same nonparty to the transaction as the fatally defective notice of default, Series 2016-CTT. See Exhibit G. This notice of sale is of no legal effect and any sale of the property that occurs from this notice would be considered legally void.

38. The foreclosure sale scheduled for July 28, 2025 cannot go forward as it is seeking to foreclose on the primary residence with no foundational valid mortgage security interest as its foundation.

## Count II: Injunctive Relief

39. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 38.

40. No authority exists for a foreclosure sale by Series 2016-CTT and all documents in relationship to the notices, etc are fatally defective.

41. This has caused this TRO to be filed today in order to prevent an unlawful act and irreparable harm to Plaintiffs.

42. The irreparable harm to Plaintiffs is the loss of a home they have built themselves, it is unique and cannot be replaced with pecuniary damages, and Plaintiffs are without any adequate remedy at law.

43. Plaintiffs are entitled to a restraining order to prevent Defendants from further actions during the pendency of this lawsuit against irreparable and on-going harm to the Plaintiffs.

44. There is no other adequate remedy at law, which necessitates injunctive relief. This is supported and outlined in M. G.L. Chapter 209A and the Massachusetts Rules of Civil Procedure, particularly Rule 65.

45. The Complaint will likely succeed on the merits as the unlawfully recorded documents, documents that are void on their face in accordance with Massachusetts statutes, are fatally defective and will be cancelled.

46. The likelihood of success validating specifically that MERS could not transfer the promissory note is in accordance with Massachusetts Part 1, Title XV, Chapter 106, Article 9, § 9-203(b)(1) as no value was, nor could, be received by MERS for a promissory note that it did not own, hold, possess or have entitlement to enforce.

47. The likelihood of success in this action will be reinforced as after having received only deposits transferred from AmTrust Bank to New York Community Bank an assignment of the Mortgage, WITHOUT THE DEBT, appeared recorded on 6/7/2011 in the Middlesex County Records for an assignment on 5/25/2011 to Nationstar Mortgage, LLC which in accordance with the Massachusetts statutes is a VOID assignment on its face as held *Eaton v. Federal Nat. Mortg. Ass'n, 496 Mass. 824, 15 N.E.3d 729 (2014).*

48. A "naked mortgage" is insufficient: A mortgagee (the entity holding the mortgage) who does not also hold the underlying promissory note lacks the authority to foreclose in Massachusetts.

49. The likelihood of success in this action will be the reinforcement of the statutes that prove all assignments of the mortgage, without the debt, in accordance with the Massachusetts statutes are a VOID assignment on its face.

50. The likelihood of success in this action is parallel with other cases granting this relief and in line with applicable case law that no action can go forward through the use of fraudulent documents to initiate a process that otherwise is unlawful and also that the Plaintiffs have no evidence of the Note being transferred, an element that is required to perform a nonjudicial foreclosure.

51. Defendant is violating the law by attempting to initiate the Massachusetts non-judicial foreclosure scheme strictly construed pursuant to General Law - Part II, title 1, Chapter

183, § 21 in accordance with the Statutory Power of Sale. Because the Defendant is not permitted to initiate a nonjudicial sale when:

   a.  the borrower is not in default to Defendant,
   b.  the Defendant does not have any debt it is pursuing,
   c.  The mortgage and the debt are no longer together with any note holder,
   d.  Defendants have no legal basis to sell the property, and
   e.  Defendants have no standing to enforce a Mortgage where the Power of Sale Is Void.

52. Plaintiffs are entitled to this remedy as there is no prejudice against the Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE RMAC TRUST, SERIES 2017-B (which is a pass-through trust and has no damages at this time). Defendant MERS is not prejudiced as it never had a promissory note that was to be repaid to Defendant and it has no recoverable damage from Plaintiffs.

53. The granting of the restraining order preserves the status quo of all parties and is normal in equitable actions like these.

## CONCLUSION:

In 2018, FNMA paid off the entire debt and proceeded to sell their rights in collection of the subrogated debt to **Elkhorn Depositor LLC**. (SEE EXHIBIT E.) All documents leading to the sale are of no legal effect as they were not initiated by the entitled party to the nonjudicial sales process. To date there has been no notice from the party with the ability to foreclose on the Note and mortgage (which are separate in Massachusetts) represented as by and through a Delaware Statutory Trust. The Trust further sold their rights in the subrogated debt one more time to investors who have not presented their certificates of participation to cash in. Defendant is a pass-through investment trust, where cash flow goes to stock holders who purchased certificates of participation and they have no recoverable damages or standing to foreclose. MERS is merely an electronic recording system and has no recoverable damages at this time. MERS assignments are void as no assignments are inclusive of the debt herein.

In short, Defendants have no legal right to a nonjudicial foreclosure for a number of reasons, including they do not Hold, under the UCC, a debt definition, and are not assignees of the DOT as no one with the lien assigned it to them.

WHEREFORE Plaintiffs ROBIN L. BOUCHER and CARY D. BOUCHER respectively move this Honorable Court for a Declaratory Judgment whereby Defendants have no rights to nonjudicially foreclose on the primary residence and GRANT the Injunctive Relief.

Date: July ____, 2025

Respectfully submitted,

Cary D. Boucher

Robin L. Boucher
7 Fairbanks Lane
North Reading, Massachusetts
(978) 404-1479
rlboucher1966@gmail.com

MIDDLESEX, SS. **Commonwealth of Massachusetts**
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file and of record made by photographic process, I hereunto set my hand and affix the seal of said Superior Court this 6th day of August 2025.

Deputy Assistant Clerk

# EXHIBIT

# A

■ Redacted information

ORIGINAL    NOTE

Loan Number: ▉▉▉

MIN.: ▉▉▉▉▉▉

July 28, 2008          Gibbsboro          New Jersey
[Date]                 [City]             [State]

7 Fairbanks Lane, North Reading, MA 01864
[Property Address]

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $245,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is NATIONAL FUTURE MORTGAGE, INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.    PAYMENTS

(A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on September, 2008. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on August 1, 2038, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at NATIONALSETTLEMENTS@COMCAST.NET, GIBBSBORO, NJ 08026 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,629.99 .

### 4.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 1 of 3

Form 3200 01/01
12601MU 03/00
©2000, The Compliance Source, Inc.

CJB

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3200 01/01

—THE COMPLIANCE SOURCE, INC.—                                          Page 2 of 3                                                          1160IMU 08/00

www.compliancesource.com                                                                                                          ©2003, The Compliance Source, Inc.

date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
Cary D Boucher                          -Borrower            -Borrower

_____ (Seal)                    _____ (Seal)
                                        -Borrower            -Borrower

*[Sign Original Only]*

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3200 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 3 of 3                        12601MU 08/00
www.compliancesource.com                                                            ©2000, The Compliance Source, Inc.

# EXHIBIT

# B

Total Number of Pages: 14
Property Address: 7 Fairbanks Lane, North Reading, MA 01864

After recording please return to:
AmTrust Bank Final Documents Department
[Name]     NATIONAL SETTLEMENT SOLUTIONS, INC.
                    2 EASTWICK DRIVE
                    SUITE 300
[Attention]     GIBBSBORO, NJ 08026
1111 Chester Ave, Suite 200, Mail Code: OH98-0201
[Street Address]
Cleveland, Ohio 44114-3516
[City, State, Zip Code]



Bk: 51535 Pg: 48   Doc: MTG
Page: 1 of 15   08/05/2008 11:10 AM

———————————————————[Space Above This Line For Recording Data]———————————————

Loan Number: 7994018

MIN: 100285200079940185

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)     "Security Instrument" means this document, which is dated July 28, 2008, together with all Riders to this document.

(B)     "Borrower" is CARY D. BOUCHER, A MARRIED MAN. Borrower is the trustor under this Security Instrument.

(C)     "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)     "Lender" is NATIONAL FUTURE MORTGAGE, INC.. Lender is a corporation organized and existing under the laws of The State of New Jersey. Lender's address is 2 Eastwick Dr. Suite 300, Gibbsboro, NJ 08026.

(D-1)     Mortgage Broker/Mortgage Originator.
The name of the Mortgage Broker is No mortgage broker was involved in the placing of this loan. Mortgage Broker's post office address is N/A. Mortgage Broker's license number is N/A. The name of the Mortgage Loan Originator is No mortgage loan officer was involved in the placing of this loan. Mortgage Loan Originator's post office address is N/A. Mortgage Loan Originator's license number is N/A.

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument     Form 3022 1/01
MERS Modified
The Compliance Source, Inc.     Page 1 of 14 Modified by Compliance Source 14391MA 08/00 Rev. 04/08
www.compliancesource.com     ©2000, The Compliance Source, Inc.
                    7994018

(E)    "Note" means the promissory note signed by Borrower and dated July 28, 2008. The Note states that Borrower owes Lender  Two Hundred Forty Five Thousand  and 00/100ths Dollars (U.S. $245,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than August 1, 2038.

(F)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider                        ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider          ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☐ Revocable Trust Rider
☐ Other(s) [specify]

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)    "Escrow Items" means those items that are described in Section 3.

(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3022 1/01
MERS Modified
The Compliance Source, Inc.                    Page 2 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com                                                    ©2000, The Compliance Source, Inc.
                                                                                            7994018

C.D.B
R.L.B

(P)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

<table>
<tr><td>County</td><td>of</td><td>Middlesex</td></tr>
<tr><td>[Type of Recording Jurisdiction]</td><td></td><td>[Name of Recording Jurisdiction]</td></tr>
</table>

See Attached Exhibit A

which currently has the address of 7 Fairbanks Lane

                        [Street]

            North Reading           , Massachusetts  01864           ("Property Address"):
               [City]                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

/

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument          Form 3022 1/01
MERS Modified
The Compliance Source, Inc.                    Page 3 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com                                          ©2000, The Compliance Source, Inc.
                                                                                    7994018



UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3022 1/01
MERS Modified
The Compliance Source, Inc.                                Page 4 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com                                                          ©2000, The Compliance Source, Inc.
                                                                                                          7994018



furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens.    Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument    Form 3022 1/01
MERS Modified
The Compliance Source, Inc.                          Page 5 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com                                              ©2000, The Compliance Source, Inc.
                                                                                        7994018



this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by


Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3022 1/01
MERS Modified
The Compliance Source, Inc.                                  Page 6 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com                                                          ©2000, The Compliance Source, Inc.
                                                                                                         7994018



this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                                    Form 3022 1/01
MERS Modified
The Compliance Source, Inc.                                    Page 7 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com                                                                        ©2000, The Compliance Source, Inc.
                                                                                                              7994018

CDB
RLB

Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:



(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

· (b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                    Form 3022 1/01
MERS Modified
The Compliance Source, Inc.                    Page 9 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com                                ©2000, The Compliance Source, Inc.
                                    7994018



that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable



Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument      Form 3022 1/01
MERS Modified
The Compliance Source, Inc.      Page 11 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com      ©2000, The Compliance Source, Inc.
7994018



Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtsey and dower in the Property.

The following signature(s) and acknowledgment(s) are incorporated into and made a part of this Massachusetts Mortgage dated July 28, 2008 between CARY D. BOUCHER, A MARRIED MAN, and NATIONAL FUTURE MORTGAGE, INC..

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                Form 3022 1/01
MERS Modified
The Compliance Source, Inc.                    Page 13 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com                                              ©2000, The Compliance Source, Inc.
                                                                                          7994018

CDB
RLB

such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any

CDB
RLB

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)
**Cary D Boucher**                   -Borrower
[Printed Name]

_____(Seal)
**ROBIN L BOUCHER**              -Borrower
[Printed Name]

_____ (Seal)
                                        -Borrower
[Printed Name]

_____ (Seal)
                                        -Borrower
[Printed Name]

## ACKNOWLEDGMENT

State of MA                                    §
                                                      §
County of Middlesex                      §

On this 28 day of JULY 2008 before me, the undersigned notary public, personally appeared Cary D Boucher and ROBIN L BOUCHER, proved to me through satisfactory evidence of identification, which were MA Drivers license be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

In witness whereof I hereunto set my hand and official seal.

_____
Official Signature of Notary

Kristy M. DeSisto
Printed Name

Attorney/Notary
Title of Officer

My Commission Expires: 4-9-2015

-(Seal)

KRISTY M. DeSISTO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
April 9, 2015

Massachusetts Mortgage—Single Family—Fannie Mae/Freddie Mac Uniform Instrument                     Form 3022 1/01
MERS Modified
The Compliance Source, Inc.                     Page 14 of 14 Modified by Compliance Source 14301MA 08/00 Rev. 04/08
www.compliancesource.com                                    ©2000, The Compliance Source, Inc.
                                                                                                                            7994018

EXHIBIT A

THE LAND IN NORTH READING, MIDDLESEX COUNTY, MASSACHUSETTS AND BEING SHOWN AS LOT NO. 7 ON A PLAN ENTITLED, "DEFINITIVE SUBDIVISION PLAN OF FAIRBANKS ESTATES", PREPARED FOR: TOWER HOMES, INC.", BY THOMAS E. NEVE ASSCIATES, INC., ENGINEERS - SURVEYORS - LAND USE PLANNERS, DATED JUNE 1, 2001 RECORDED WITH MIDDLESEX COUNTY (SOUTHERN DISTRICT) REGISTRY OF DEEDS, PLAN NUMBER 32 OF 2002, INSTRUMENT NO. 1256 OF JANUARY 10TH, 2002.

BEGINNING AT A POINT ON THE SOUTHERLY SIDELINE OF FAIRBANKS LANE A THE FRONT CORNER OF LOTS 7 AND 8;

THENCE TURNING AND RUNNING ALONG THE SOUTHERLY SIDELINE OF FAIRBANKS LANE SOUTH 86 DEGREES 05 MINUTES 26 SECONDS EAST A DISTANCE OF 155.71 FEET TO A POINT;

THENCE TURNING AND RUNNING ALONG THE SOUTHERLY SIDELINE OF FAIRBANKS LANE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 323.75 FEET A DISTANCE OF 12.50' TO A CORNER AT LOT 6;

THENCE TURNING AND RUNNING ALONG LOT 6 SOUTH 05 DEGREES 10 MINUTES 44 SECONDS WEST A DISTANCE OF 86.81 FEET TO A POINT;

THENCE TURNING AND RUNNING ALONG LOT 6 SOUTH 04 DEGREES 07 MINUTES 23 SECONDS EAST A DISTANCE OF 420.69 FEET TO A CORNER AT LAND OF NORTH HILL RECREATIONAL TRUST, LAND OF 1998 REALTY TRUST AND LOT 6;

THENCE TURNING AND RUNNING ALONG LAND OF NORTH HILL RECREATIONAL TRUST NORTH 63 DEGREES 25 MINUTES 09 SECONDS WEST A DISTANCE OF 238.34 FEET TO A CORNER AT LOT 8;

THENCE TURNING AND RUNNING ALONG LOT 8 NORTH 05 DEGREES 46 MINUTES 38 SECONDS EAST A DISTANCE OF 366.13 FEET TO A POINT;

THENCE TURNING AND RUNNING ALONG LOT 8 NORTH 16 DEGREES 32 MINUTES 18 SECONDS WEST A DISTANCE OF 48.87 FEET TO THE POINT OF BEGINNING.

MEANING AND INTENDING TO CONVEY LOT 7, CONTAINING 81,036 SQUARE FEET OR 1.86 ACRES OF LAND AS SHOWN ON A DEFINITIVE SUBDIVISION PLAN OF "FAIRBANKS ESTATES", NORTH READING, MASSACHUSETTS, SHEET 2 OF 9, PREPARED FOR TOWER REALTY TRUST AND PREPARED BY THOMAS E. NEVE ASSOCIATES, INC. REVISED DATED OCTOBER 29, 2001.

*Eugene C. Bruno*

Attest Middlesex S. Register

ADDRESS: 7 FAIRBANKS LANE; NORTH READING, MA 01864   TAX MAP OR PARCEL ID NO.: 61-99

T.R   37909-107

# EXHIBIT

# C

LENDER:        NATIONAL FUTURE MORTGAGE, INC.

BORROWER:    Cary D Boucher

PROPERTY:     7 Fairbanks Lane, North Reading, MA 01864

LOAN NO./MIN:    ████████████

# ENDORSEMENT ALLONGE TO NOTE

This Allonge to Note is to that certain Note dated July 28, 2008, executed by Cary D Boucher in the amount of $245,000.00, in favor of NATIONAL FUTURE MORTGAGE, INC. as payee. This Allonge is affixed and becomes a permanent part of said Note.

PAY TO THE ORDER OF AmTrust Bank

WITHOUT RECOURSE.

LENDER: NATIONAL FUTURE MORTGAGE, INC.

Signature By: _____

Printed Name: Lisa Santcrepio

Title: Closing Manager

Cleveland, Ohio _____ 20 __
PAY TO THE ORDER OF _____

Without Recourse
AmTrust Bank
AFKA Ohio Savings Bank

By: _____
Roslind Jones
Authorized Agent

Endorsement Allonge to Note (Multistate)
AmTrust Bank                              Page 1 of 1                    26380MU 01/05 Rev. 03/05

# EXHIBIT

# D

BK: 56958 Pg: 129

Record and Return to:
Doonan, Graves, & Longoria
Attn: Brian Linehan
100 Cummings Center
Suite 225D
Beverly, MA 01915

2011 00097815
Bk: 56958 Pg: 129    Doc: ASM
Page: 1 of 2    06/07/2011 02:16 PM

## ASSIGNMENT OF MORTGAGE

Know that, for valuable consideration, New York Community Bank.
("ASSIGNOR"), hereby sells, assigns, and transfers to Nationstar Mortgage LLC
("ASSIGNEE"), whose mailing address is 350 Highland Drive, Lewisville, Texas 75067,
the Assignor's interest in a certain mortgage made by Cary D. Boucher to Mortgage
Electronic Registration Systems, Inc., as nominee for National Future Mortgage, Inc.
dated July 28, 2008 and recorded in the Middlesex County (Southern District) Registry of
Deeds in Book 51535, Page 48, describing land therein as:

7 Fairbanks Lane, North Reading, MA

New York Community Bank
Assignor

Dated: 5/25/11

By:

Its: Ryan Sabo
Assistant Vice President

State of OH       )
County of Cuyahoc r,  )    ss.

On 5/25/2011 , before me, La'Somanic Lawson
Notary Public, personally appeared Ryan Sabo , who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of OH that
the foregoing paragraph is true and correct.

Witness my hand and official seal.

(Notary signature:)

**LA'SOMANIC LAWSON**
Notary Public, State of Ohio
Recorded in Cuyahoga County
My Commission Expires
March 3, 2014

Mortgage Broker

Name: _____

Address: _____

_____

License #: _____

Mortgage Originator

Name: _____

Address: _____

_____

License #: _____

# EXHIBIT

E

Homebuyers, Owners, & Renters ⌄

Home / Newsroom / Fannie Mae News / Fannie Mae Announces Winner of its Latest Non-Performing Loan Sale

Press Release

# Fannie Mae Announces Winner of its Latest Non-Performing Loan Sale

March 14, 2018

Alicia Jones
202-752-5716

WASHINGTON, DC – Fannie Mae (FNMA/OTC) today announced the winning bidders for its twelfth non-performing loan sale. The sale includes approximately 5,700 loans totaling $1.002 billion in unpaid principal balance (UPB), divided among three pools. The winning bidders for the transaction are Bungalow Series III Trust (Balbec Capital LP) for pool 1 and Elkhorn Depositor LLC (Roosevelt Management Company LLC) for pools 2 and 3. The transaction is expected to close on April 24, 2018.

In collaboration with Bank of America Merrill Lynch and First Financial Network, Inc., Fannie Mae began marketing these loans to potential bidders on February 13, 2018.

The loan pools awarded in this most recent transaction include:

- Group 1 Pool: 1,061 loans with an aggregate unpaid principal balance of $178,269,824; average loan size $168,021; weighted average note rate 4.48%; weighted average delinquency 19 months; and weighted average broker's price opinion (BPO) loan-to-value ratio of 91%.
- Group 2 Pool: 2,793 loans with an aggregate unpaid principal balance of $441,703,102; average loan size $158,146; weighted average note rate 5.04%; weighted average delinquency 34 months; and weighted average BPO loan-to-value ratio of 65%.
- Group 3 Pool: 1,822 loans with an aggregate unpaid principal balance of $382,833,067; average loan size $210,117; weighted average note rate 4.38%; weighted average delinquency 35 months; weighted average BPO loan-to-value ratio of 130%.

The cover bid, which is the second highest bid, for pool 1 was 75.13% of UPB (56.80% of BPO) and for pools 2 and 3 combined was 77.69% of UPB (58.05% of BPO).

Bids are due on Fannie Mae's eleventh and twelfth Community Impact Pools on March 20, 2018.

On April 14, 2016, the Federal Housing Finance Agency announced additional enhancements to its requirements for sales of non-performing loans by Fannie Mae and Freddie Mac that build on the requirements originally announced in March 2015. The additional requirements, which apply to this Fannie Mae non-performing loan sale, encourage sustainable modifications that have the potential to provide more borrowers the opportunity for home retention by requiring evaluation of underwater borrowers for modifications that may include principal and/or arrearage forgiveness; forbidding "walking away" from vacant homes; and establishing more specific proprietary loan modification standards.

Potential buyers can register for ongoing announcements or training, and find more information on Fannie Mae's sales of non-performing loans and on the Federal Housing Finance Agency's guidelines for these sales, at https://www.fanniemae.com/portal/funding-the-market/npl/index.html.

*Fannie Mae helps make the 30-year fixed-rate mortgage and affordable rental housing possible for millions of Americans. We partner with lenders to create housing opportunities for families across the country. We are driving positive changes in housing finance to make the home buying process easier, while reducing costs and risk. To learn more, visit fanniemae.com and follow us on twitter.com/FannieMae.*

TOPICS

( Fannie Mae Corporate )





Ⓐ Fannie Mae

Our Company

About Us
Contact Us
Careers
Investor Relations
Newsroom
Research & Insights
ESG

Business Partners

Single-Family Business
Multifamily Business
Capital Markets
Suppliers
Developer Portal

HomeView Homeownership Education Course

HomePath - Search for Homes

Make Your Rent Count

**Calculators & Tools**

All Calculators and Tools

Glossary of Key Terms

Affordability Calculator

Down Payment Assistance Search Tool

Mobile App

**Let Us Help You**

Contact a Housing Counselor

Manage Financial Uncertainty

Recover from a Disaster

Follow us

Legal    Privacy    Cookie Preferences

© 2023 Fannie Mae

Give Feedback

# EXHIBIT

# F

 **Rushmore** P.O. Box 619098
**Servicing** Dallas, TX 75261



**OUR INFO**
**ONLINE**
www.rushmoreservicing.com

Cary Boucher
Robin Boucher
7 Fairbanks Lane
North Reading, MA 01864

March 4, 2024

**YOUR INFO**
LOAN NUMBER:
0708336003

CASE NUMBER:
0008709451

PROPERTY ADDRESS:
7 Fairbanks Lane
North Reading, MA 01864

MORTGAGOR NAME:
Cary Boucher

Dear Cary Boucher and Robin Boucher:

We received your letter on February 28, 2024, and we are sharing with you what we found after an investigation into your concerns.

The enclosed letter and enclosures validating the debt were sent on February 20, 2024, in response to the debt dispute you sent to attorney, Brock & Scott, PLLC.

If you allege that the enclosed true and certified copies of the Note and Mortgage that a notary public attested were signed in her presence, and validated with your Massachusetts drivers' licenses are forged, please file a police report with your local authorities.

The enclosed HUD-1 Settlement Statement shows that this loan was a cash-out refinance loan which paid off loan #0000326586906 to HomeQ Servicing in the amount of $200,583.70, tax liens in the amount of $16,888.65, and the first quarter 2008 taxes in the amount of $3,419.00 to the Town of North Reading, and a payment in the amount of $2,741.41 to Lustig, Glaser & Wilson, P.C. In addition to these disbursements in the amount of $223,632.76, you received a disbursement of $11,676.94. If you are alleging that you never received this disbursement, please contact the settlement agent, National Settlement Solutions at 856-741-1900 for proof of the payment.

Fannie Mae may have been the investor of your prior loan that was paid off in the refinance transaction that created the above-referenced mortgage loan. However, our records show that U.S. Bank National Association, not in its individual capacity but solely as trustee for the

: Rushmore Servicing℠ and Mr. Cooper® are brand names for Nationstar Mortgage LLC.

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.







RMAC Pass-Through Trust, Series 2017-B is the current owner of the Note. We have provided their contact information below:

U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Pass-Through Trust, Series 2017-B
60 Livingston Ave
EP-MN-WS3D
St. Paul, MN 55107

Please note that Rushmore Servicing is the servicer of the loan and will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include but are not limited to the following:

- Payment assistance and modifications
- Payment posting
- Validation of the debt
- Foreclosure proceedings
- Payment adjustments

Please direct any communication related to these matters to us using the contact information below. U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Pass-Through Trust, Series 2017-B will not be able to assist with any of these matters.

As of the date of this letter, the account is due for the August 1, 2009, monthly installment in the amount of $3,398.69 and all subsequent installments due thereafter. Due to the delinquency, the loan was referred to foreclosure on August 30, 2021. A sale date has not yet been scheduled.

If you would like to discuss the options to get your account back on track, please contact your Dedicated Loan Specialist, Marc Padua, at the contact number shown below.

| RESPA RESPONSE TO NOTICE OF ERROR |
|---|
| Under applicable federal law, we are required to inform you that after completing a reasonable investigation into the issues described above, it has been determined that no error occurred. You have the right to access the documents we used in this investigation, and we have enclosed them. Those documents are:<br>- Response Letter dated February 20, 2024, with 8 Enclosures<br>- Note<br>- Mortgage<br>- HUD-1 Settlement Statement |

Rushmore Servicing℠ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.



449065.1-1.3





If you have any questions, your Dedicated Loan Specialist is Marc Padua, who can be reached at 877-888-4623 or via mail Lake Vista 4, 800 State Highway 121 Bypass, Lewisville, TX 75067. Our hours of operation are Monday through Friday from 7 a.m. to 8 p.m. (CT).  Visit us on the web at www.rushmoreservicing.com for more information.

Sincerely,

Mary Portner
Customer Relations Specialist
Rushmore Servicing
PO Box 619098
Dallas, TX 75261
E-mail: mary.portner@mrcooper.com

Enclosures 12
By U.S. Standard Mail and email: RLBOUCHER1966@GMAIL.COM

---

Are you experiencing a financial hardship? Our local non-profit partners can help with financial counseling and other services. Please visit these websites for assistance:

- Hud.gov
- Neighborworks.org



Rushmore Servicing℠ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.

449065.1-1.4





Rushmore Servicing℠ and Mr. Cooper® are brand name for Nationstar Mortgage LLC.

449065.1-1.5

# EXHIBIT

# G

2387517341



**Consumer Hotline**
844-856-6646
Phone:
401-217-8701

23 Messenger Street, 2ⁿᵈ Floor, Plainville, MA 02762
ConsumerContact@brockandscott.com
www.brockandscott.com
February 2, 2024

Fax:
401-217-8702

ROBIN L BOUCHER
7 FAIRBANKS LN
NORTH READING, MA 01864-2836

RE:   Mortgagor(s):   Cary D. Boucher and Robin L. Boucher
      Property:       7 Fairbanks Lane, North Reading, MA 01864
      B&S File No.:   23-18017 FC01
      Loan No.:       ******6003

Dear Madam or Sir:

This office has been retained by U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT, the current holder of the loan, in connection with the mortgage loan on the above referenced property. In accordance with the provisions of Massachusetts General Laws, Chapter 244, Section 14, you are hereby notified of the foreclosure sale of the above-referenced property on March 26, 2024 at 12:00 PM all in accordance with the attached legal notice of Mortgagee's Sale of Real Estate.

Enclosed herein please also find a Certification under 209 CMR 18.21A which is being provided to you pursuant to Massachusetts General Laws, Chapter 244 Section 17B. **If the debt secured by your mortgage has been discharged in bankruptcy, no demand for payment of the loan is being made, and this notice is given solely to comply with the statute.**

Respectfully,
Brock & Scott, PLLC

Enclosures

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU: ARE A DEBTOR IN AN ACTIVE BANKRUPTCY CASE; ARE UNDER THE PROTECTION OF A BANKRUPTCY STAY; OR, HAVE RECEIVED A DISCHARGE IN BANKRUPTCY AND YOU HAVE NOT REAFFIRMED THE DEBT, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT FROM YOU PERSONALLY.**



B&S File No: 23-18017 FC01

## NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE

Premises:    7 Fairbanks Lane, North Reading, MA 01864

By virtue and in execution of the Power of Sale contained in a certain mortgage given by Cary D. Boucher and Robin L. Boucher to Mortgage Electronic Registration Systems, Inc., as Mortgagee, as nominee for National Future Mortgage Inc., and now held by **U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT**, said mortgage dated July 28, 2008 and recorded in the Middlesex County (Southern District) Registry of Deeds in Book 51535, Page 48, as affected by Default Judgment entered September 23, 2020 and recorded in said Registry of Deeds in Book 75991, Page 487, said mortgage was assigned from Mortgage Electronic Registration Systems Inc. as nominee for National Future Mortgage, Inc. to New York Community Bank by assignment dated August 4, 2010 and recorded with said Registry of Deeds in Book 55182, Page 450; said mortgage was assigned from New York Community Bank to Nationstar Mortgage LLC by assignment dated May 25, 2011 and recorded with said Registry of Deeds in Book 56958, Page 129; said mortgage was assigned from Nationstar Mortgage LLC to U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT by assignment dated May 17, 2018 and recorded with said Registry of Deeds in Book 71030, Page 431; for breach of the conditions in said mortgage and for the purpose of foreclosing the same will be sold at **Public Auction on** March 26, 2024 at 12:00 PM Local Time upon the premises, all and singular the premises described in said mortgage, to wit:

*THE LAND IN NORTH READING, MIDDLESEX COUNTY, MASSACHUSETTS AND BEING SHOWN AS LOT NO. 7 ON A PLAN ENTITLED, "DEFINITIVE SUBDIVISION PLAN OF FAIRBANKS ESTATES", PREPARED FOR: TOWER HOMES, INC. ", BY THOMAS E. NEVE ASSCIATES, INC., ENGINEERS - SURVEYORS - LAND USE PLANNERS, DATED JUNE 1, 2001 RECORDED WITH MIDDLESEX COUNTY (SOUTHERN DISTRICT) REGISTRY OF DEEDS; PLAN NUMBER 32 OF 2002, INSTRUMENT NO. 1256 OF JANUARY 10TH, 2002.*

*BEGINNING AT A POINT ON THE SOUTHERLY SIDELINE OF FAIRBANKS LANE A THE FRONT CORNER OF LOTS 7 AND 8;*

*THENCE TURNING AND RUNNING ALONG THE SOUTHERLY SIDELINE OF FAIRBANKS LANE SOUTH 86 DEGREES 05 MINUTES 26 SECONDS EAST A DISTANCE OF 155.71 FEET TO A POINT;*

*THENCE TURNING AND RUNNING ALONG THE SOUTHERLY SIDELINE OF FAIRBANKS LANE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 323.75 FEET A DISTANCE OF 12.50' TO A CORNER AT LOT 6;*

*THENCE TURNING AND RUNNING ALONG LOT 6 SOUTH 05 DEGREES 10 MINUTES 44 SECONDS WEST A DISTANCE OF 86.81 FEET TO A POINT;*

*THENCE TURNING AND RUNNING ALONG LOT 6 SOUTH 04 DEGREES 07 MINUTES 23 SECONDS EAST A DISTANCE OF 420.69 FEET TO A CORNER AT LAND OF NORTH HILL RECREATIONAL TRUST, LAND OF 1998 REALTY TRUST AND LOT 6;*

*THENCE TURNING AND RUNNING ALONG LAND OF NORTH HILL RECREATIONAL TRUST NORTH 63 DEGREES 25 MINUTES 09 SECONDS WEST A DISTANCE OF 238.34 FEET TO A*



B&S File No: 23-18017 FC01

*CORNER AT LOT 8;*

*THENCE TURNING AND RUNNING ALONG LOT 8 NORTH 05 DEGREES 46 MINUTES 38 SECONDS EAST A DISTANCE OF 366.13 FEET TO A POINT;*

*THENCE TURNING AND RUNNING ALONG LOT 8 NORTH 16 DEGREES 32 MINUTES 18 SECONDS WEST A DISTANCE OF 48.87 FEET TO THE POINT OF BEGINNING.*

*MEANING AND INTENDING TO CONVEY LOT 7, CONTAINING 81, 036 SQUARE FEET OR 1.86 ACRES OF LAND AS SHOWN ON A DEFINITIVE SUBDIVISION PLAN OF "FAIRBANKS ESTATES", NORTH READING, MASSACHUSETTS, SHEET 2 OF 9, PREPARED FOR TOWER REALTY TRUST AND PREPARED BY THOMAS E. NEVE ASSOCIATES, INC. REVISED DATED OCTOBER 29, 2001*

*ADDRESS: 7 FAIRBANKS LANE, NORTH READING, MA 01864*
*MAP OR PARCEL ID NO.: 61-99*

The description of the property contained in the mortgage shall control in the event of a typographical error in this publication.

For Mortgagor's Title see deed dated January 31, 2003 and recorded in the Middlesex County (Southern District) Registry of Deeds in Book 37909, Page 107.

TERMS OF SALE: Said premises will be sold and conveyed subject to all liens, encumbrances, unpaid taxes, tax titles, municipal liens and assessments, if any, which take precedence over the said mortgage above described.

FIVE THOUSAND ($5,000.00) Dollars of the purchase price must be paid in cash, certified check, bank treasurer's or cashier's check at the time and place of the sale by the purchaser. The balance of the purchase price shall be paid in cash, certified check, bank treasurer's or cashier's check within thirty (30) days after the date of sale.

Other terms to be announced at the sale.

Brock & Scott, PLLC
23 Messenger Street
2nd Floor
Plainville, MA 02762
Attorney for U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT
Present Holder of the Mortgage
(401) 217-8701



B&S File No: 23-18017 FC01

## CERTIFICATE RELATIVE TO FORECLOSING PARTY'S
## RIGHT TO FORECLOSE PURSUANT TO 209 C.M.R 18.21A(2)(c)

The undersigned, Paul Romero, having personal knowledge of the facts herein stated, hereby certifies as follows:

1. I am a **Assistant Secretary** of Rushmore Loan Management Services LLC.

2. Rushmore Loan Management Services LLC is a loan servicer within the meaning of 209 C.M.R. 18.02 for U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT with respect to that certain mortgage given by Cary D. Boucher and Robin L. Boucher to Mortgage Electronic Registration Systems, Inc. as mortgagee, as nominee for National Future Mortgage, Inc., its successors and assigns dated July 28, 2008, and recorded with Middlesex County (Southern District) Registry of Deeds in Book 51535, Page 48 (the "Mortgage"). Said mortgage is affected by a Judgment which reformed the mortgage to included Robin L. Boucher as a borrower dated September 23, 2020, recorded or filed in Middlesex County (South District) Registry of Deeds in Book 75991, Page 487.

3. The Mortgage encumbers property known as 7 Fairbanks Lane, North Reading, Massachusetts 01864 (the "Property").

4. According to a review of our business records, the record holder of the Mortgage as of the date of this certification is U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT. The chain of recorded assignments of the Mortgage is set forth as follows:
Mortgage: From Cary D. Boucher and Robin L. Boucher to Mortgage Electronic Registration Systems, Inc. as mortgagee, as nominee for National Future Mortgage, Inc., its successors and assigns, dated 7/28/2008:

   [X] recorded in Middlesex County (Southern District) Registry of Deeds in Book 51535, Page 48.

   [ ] filed in Middlesex Registry District of the Land Court as Document No. ___ and noted on Certificate of Title No.____.

   Assigned to U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT by assignment(s) dated and recorded/files as follows:



Assignment from Nationstar Mortgage LLC to U.S. Bank National Association, not in its individual capacity, but solely as Trustee for the RMAC Trust, Series 2016-CTT dated May 17, 2018.

[X] recorded Middlesex County (Southern District) Registry of Deeds in Book 71030, Page 431.

[ ] filed in Middlesex Registry District of the Land Court as Document No. _____ and noted on Certificate of Title No. _____.

Assignment from New York Community Bank to Nationstar Mortgage LLC dated May 25, 2011.

[X] recorded Middlesex County (Southern District) Registry of Deeds in Book 56958, Page 129.

[ ] filed in Middlesex Registry District of the Land Court as Document No. _____ and noted on Certificate of Title No. _____.

Assignment from Mortgage Electronic Registration Systems, Inc., as mortgagee, as nominee for National Future Mortgage, Inc., its successors and assigns to New York Community Bank dated August 4, 2010.

[X] recorded Middlesex County (Southern District) Registry of Deeds in Book 55182, Page 450.

[ ] filed in Middlesex Registry District of the Land Court as Document No. _____ and noted on Certificate of Title No. _____.

5. According to a review of our business records, the Promissory Note granted by Cary D. Boucher to National Future Mortgage, Inc., dated July 28, 2008 in the original principal amount of $245,000.00 is currently owned by U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT.

6. U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT has the right to foreclose because the mortgage loan is in the default and U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT is the holder of the Mortgage and the holder of the Note or is the authorized agent of the Note holder.



7. A copy of the original promissory note secured by the Mortgage, together with all existing endorsements and allonges, is provided herewith.

Rushmore Loan Management Services LLC as Servicer for U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT

6-1-22

Date

By:    Mario Selva

Title:

ASSISTANT VICE PRESIDENT

# EXHIBIT

# H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

U.S. BANK NATIONAL ASSOCIATION *not in
its individual capacity but solely as Trustee for the
RMAC Trust, Series 2016-CTT*,

              Plaintiff,

              -against-

SAMUEL DESROSIERS,

              Defendant.

------------------------------------------------------------X

**WICKS,** Magistrate Judge:

**MEMORADUM
AND ORDER**
17-CV-7338 (JMW)

Plaintiff U.S. Bank National Association, as Trustee for the RMAC Trust, Series 2016-CTT, commenced this action pursuant to New York Real Property Actions and Proceeding Law ("RPAPL") seeking to foreclose a mortgage encumbering property at 192 Jefferson Avenue, Amityville, New York 11701 owned by Defendant Samuel Desrosiers. (DE 26.) In response, Defendant filed two counterclaims against Defendant, one asserting that this foreclosure action is frivolous under Federal Rule of Civil Procedure 11, and one alleging that Plaintiff and its counsel—Gross Polowy, LLC—violated Section 1692(f) of the Fair Debt Collections Act ("FDCPA"). (DE 28.)

Presently before the Court are the parties' cross-motions for summary judgment on Plaintiff's RPAPL claim. (DE 36, 43.) In his respective motion, Defendant asserts that this Court lacks diversity jurisdiction over this matter. (DE 43.) Based on this jurisdictional issue, the Honorable A. Kathleen Tomlinson—who previously presided over this case—temporarily denied both parties' motions and directed additional briefing to give Plaintiff a final opportunity to properly allege its citizenship for diversity purposes. (DE 50.) Having considered the parties' supplemental arguments (DE 51, 52), the Court now concludes that Plaintiff has failed to establish that this Court has subject matter jurisdiction over the controversy and, accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's motion is GRANTED.

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

## RELEVANT BACKGROUND

The Court assumes the parties' familiarity with the factual underpinnings of this case and the prior proceedings.[1] From the very nascent stage of this matter, the question of whether Plaintiff properly established subject matter jurisdiction by way of diversity of citizenship was a concern. On September 9, 2019, then-Magistrate Judge Gary R. Brown—after the parties had consented to magistrate jurisdiction for all purposes—granted Defendant's motion to dismiss for jurisdictional infirmities. (Electronic Order dated Sept. 9, 2019.) Judge Brown specifically stated that

> the Court independently determined that the Complaint is silent on the issue of the citizenship of the RMAC Trust and/or its shareholders. To establish diversity jurisdiction, plaintiff is required to allege such information. Americold Realty Tr. v. Conagra Foods, Inc., 136 S. Ct. 1012, 1016, 194 L. Ed. 2d 71 (2016) ("[S]hareholders [of a real estate trust] appear to be in the same position as the shareholders of a joint-stock company or the partners of a limited partnership . . . for purposes of diversity jurisdiction, members [of a real estate trust] include its shareholders"). A complaint is deficient where it has no allegation as to the identity or citizenship of [an LLCs] members. Carter v. Healthport Tech., LLC, 822 F.3d 47, 60 (2d Cir. 2016). The failure to allege the citizenship of the trust itself prevents an examination of the appropriate state law to determine the rules applicable to the Trust. Based upon this failure to adequately allege diversity jurisdiction, the Complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff may, if appropriate, file an amended complaint and appropriate supporting materials within 30 days of the date of this order. This dismissal is further supported by US National's failure to adequately allege its own citizenship, relying solely upon an allegation concerning its "principle place of business," a mistake it has made in the past. See, e.g., US v. Monroe, 2017 WL 923326 (NDNY 2017). Moreover, on this motion, defendant raises a substantial issue on the question of the application of the statute of limitations. Though raised in the context of a motion to dismiss, the papers contain sufficient outside factual information that conversion to a motion for summary judgment under Rule 12(d) would be appropriate. Thus, should the plaintiff file an amended complaint, defendant shall be permitted to refile the pending motion as one for summary judgment under Rule 56.

(*Id.*) In response to that order, Plaintiff filed an amended complaint (DE 20) and then a second amended complaint (DE 26), apparently in an attempt to cure the jurisdictional deficiencies outlined by Judge Brown.

The case was then reassigned to Judge Tomlinson (Electronic Order dated Dec. 17, 2020), at which point the parties filed their respective cross-motions for summary judgment (DE 36, 43). On March 31, 2021, Judge Tomlinson issued a Memorandum and Order temporarily denying both parties' motions. (DE

---

[1] For a more robust factual and procedural background, the Court directs the parties to Judge Tomlinson's March 31, 2021 Memorandum and Order. (*See* DE 50.)

50.) In her scrupulous decision, Judge Tomlinson again highlighted that it remained unclear whether Plaintiff had sufficiently established diversity jurisdiction. (*Id.* at 6.) Although the parties disputed the manner in which the citizenship of Plaintiff should be determined, Judge Tomlinson concluded that—under controlling Supreme Court precedent—Plaintiff was required to either (1) point to specific portions of the Trust Agreement or something else demonstrating that its control over the trust assets is real and substantial; or (2) allege the citizenship of the beneficiaries of the Trust. (*Id.* at 11.) As such, Judge Tomlinson directed the parties to file supplemental briefing on this focused jurisdictional issue (*id.*), which they subsequently did (DE 51, 52). In light of the reassignment to the undersigned on November 1, 2021, the parties cross-motions for summary judgment—again, with a focus on the issue of subject matter jurisdiction—are now before the Court.

## LEGAL STANDARD

It is axiomatic that "'federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). One such jurisdictional limitation is that of subject matter jurisdiction, which prescribes "a court's competence to adjudicate a particular category of cases." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006). Such categories are limited to cases involving a federal question, 28 U.S.C. § 1131, and cases where parties are citizens of different states and the amount in controversy exceeds $75,000.00, 28 U.S.C. § 1132. Parties cannot waive lack of subject matter jurisdiction, which "may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). The burden of proving, by a preponderance of the evidence, that subject matter jurisdiction exists rests on the plaintiff. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (citation omitted).

Where, as here, subject matter jurisdiction is premised on diversity, then "diversity of citizenship should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record." *Leveraged Leasing Admin. Corp. v. PacificCorp Cap., Inc.*, 87 F.3d 44, 47 (2d

3

Cir. 1996) (internal quotation marks and citation omitted). Diversity of citizenship is achieved only where complete diversity among the parties exists, meaning that "there is no plaintiff and no defendant who are citizens of the same [s]tate." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217–18 (2d Cir. 2016) (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)). Against this backdrop, the Court considers the present motions.

## DISCUSSION

As thoroughly detailed in Judge Tomlinson's March 31, 2021 Memorandum and Order, the Supreme Court in *Americold Realty Trust v. Conagra Foods* re-affirmed the principle that "when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the [s]tate to which she belongs—as is true of any natural person." 577 U.S. 378, 382–83 (2016) (emphasis in original). That principle, however, applies only in circumstances where the trustee is a real party in interest to the controversy, meaning that it is an "active trustee[] whose control over the assets held in [its] name is real and substantial." *U.S. Bank Tr., N.A. v. Dupree*, 15-CV-0558 (LEK/TWD), 2016 WL 5107123, at \*4 (N.D.N.Y. Sept. 20, 2016) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980)). When a plaintiff fails to show that a trustee's control over the trust assets is real and substantial, the *Americold Realty Trust* principle must yield, in which case the citizenship of the trust's *beneficiaries*—rather than the citizenship of the trustee—controls the court's diversity analysis. *See id.*

In determining whether a trustee wields sufficient control over the assets of the trust to be considered the real party in interest, courts look to the terms of the trust agreement to discern the scope of the trustee's power. *See, e.g., id.* (dismissing case for lack of subject matter jurisdiction where trust agreement did not evince sufficient trustee control over trust assets and plaintiff did not allege the citizenship of the beneficiaries); *Wilmington Tr., Nat'l Ass'n, as Tr. for the Benefit of the Registered Holders of Benchmark 2018-B5 Mortg. Tr., Comm. Mort. Pass-Through Certificates, Series 2018-B5 v. 115 Owner LLC*, 20-CV-2157 (JMF), 2021 WL 5086368, at \*1 (S.D.N.Y. Nov. 2, 2021) (holding that trustee was the real party in interest after examining the trust agreement and finding that the trustee maintained sufficient control over the trust assets); *U.S. Bank Tr., N.A., as Tr. for LSF9 Master*

4

*Participation Tr. v. Adhami*, 18-CV-530 (PKC) (AKT), 2019 WL 486086, at *3 n.4 (E.D.N.Y. Feb. 6, 2019) (same).

Upon review of the submissions, Plaintiff has again come up short in establishing subject matter jurisdiction despite Judge Tomlinson affording it "one final opportunity" to (1) point to specific portions of the Trust Agreement or something else demonstrating that its control over the trust assets is real and substantial; or (2) allege the citizenship of the beneficiaries of the Trust. (DE 50.) In its supplemental briefing, Plaintiff chose the former path, foregoing the opportunity to allege the citizenship of the Trust's beneficiaries and instead contending that its control over the assets in this case is real and substantial. (*See, e.g.*, DE 51.) In doing so, Plaintiff sets forth a two-pronged argument. First, Plaintiff asserts that the fact that Plaintiff commenced this action as a Trustee in its own name is dispositive of the jurisdictional issue. (*Id.* at 2–3.) And second, Plaintiff contends that the Limited Power of Attorney ("POA")—entered into between Plaintiff and Rushmore Loan Management Services LLC ("RLMS"), a mortgage loan servicer and attorney-in-fact—and Trust Agreement evince that Plaintiff's authority over the Trust assets is such that it is a real and substantial party in interest here. (*Id.* at 3–7.) Both arguments, however, are unavailing and do not adequately establish that this Court has subject matter jurisdiction over this dispute.

Plaintiff's first contention—that subject matter jurisdiction exists simply because Plaintiff, as Trustee, sued in its own name rather than the name of the beneficiaries—is baseless, particularly given its adamantine disregard of Judge Tomlinson's discussion and directives in her prior Memorandum and Order. Plaintiff's bumptious assertion that "its citizenship controls and the issue presented by the Court—whether the Trustee has certain authority to control the Trust assets—is immaterial" (*id.* at 3), ignores the applicable legal framework that Judge Tomlinson previously provided the parties in painstaking detail. Contrary to Plaintiff's contention that its authority under the Trust Agreement is "immaterial," the scope of its authority under the Trust Agreement is indeed the core factor of the diversity analysis. *See, e.g., Dupree*, 2016 WL 5107123 at *4; *115 Owner LLC*, 2021 WL 5086368 at *1; *Adhami*, 2019 WL 486086 at *3 n.4. Plaintiff's following argument belies its first by stating—rightfully—that "the power to execute documents and sue

5

or be sued are critical in the determination of whether the trustee or trust is the real and substantial party in interest." (DE 51 at 3.) Plaintiff's first argument therefore holds no water and fails.

Plaintiff's second argument is more appropriate than its first but nevertheless falls short of establishing subject matter jurisdiction. Plaintiff points first to the POA and then to the Trust Agreement to show that it is the real party in interest based on the amount of authority it possesses over the Trust assets. A review of the POA suggests that Plaintiff delegated sweeping authority to RLMS to service the loans held by the Trust. (DE 38-14.) Plaintiff, however, puts the cart before the horse in focusing first on the POA, as any power that Plaintiff has as Trustee is innately derived from the Trust Agreement. The proper analysis therefore begins by examining the scope of Plaintiff's authority as delineated by the Trust Agreement.

Despite Plaintiff's contentions to the contrary, a review of the provisions of the Trust Agreement makes clear that Plaintiff does not wield sufficient authority to be deemed the real party in interest in this matter. As previously noted by Judge Tomlinson, Section 5.01 of the Trust Agreement, which sets forth the Plaintiff's duties as Trustee, grants Plaintiff limited, rather than expansive, authority over the Trust assets. Section 5.01 provides that

> [t]he Trustee undertakes to perform such duties *and only such duties as specifically set forth in this Agreement or as may be directed by the Participation Agent or the Program Administrator* in accordance with Section 5.02 hereof and shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement and no implied covenants, duties or obligations shall be read into this Agreement against the Trustee[.]

(DE 38-15 at 18–19 (emphasis added).) In other words, Section 5.01 grants the Program Administrator— the beneficiary of the Trust—the ability to direct the Trustee. (*Id.*; *see id.* at 4 (defining Roosevelt Management Company LLC as both the Program Administrator and beneficiary of the Trust).) This language is nearly identical to the trust agreement language in *Dupre*, where the court concluded that plaintiff having "only such rights, powers and duties as are specifically and expressly required by th[e]

[a]greement" was insufficient to establish real and substantial control over the trust's assets.[2] 2016 WL 5107123 at *4 ("If anything, this provision seems to expressly reject the idea that [plaintiff] is an active trustee with real and substantial control over the trust's assets (and thus that [plaintiff] is the real party in interest under *Navarro*)."). The language here and in *Dupre* is virtually indistinguishable.

Moreover, the following provision, Section 5.02, underscores the limitation on Plaintiff's authority. Section 5.02, titled "Action upon Instruction," vests, in part, "the power to direct the Trustee by written instrument in matters relating to the Trust" in the Program Administrator, *i.e.* the Trust beneficiary. (*Id.* at 20.) Under this provision, the Trust beneficiary is empowered to direct Plaintiff "in connection with the execution of documents" and "enforcement of the rights and protection of the interest of the Participation Agent on behalf of the Participants." (*Id.*) The Trust Agreement therefore gives the beneficiary legitimate authority over the Trust assets rather than the mere ability to advise Plaintiff on Trust affairs. *Compare 115 Owner LLC*, 2021 WL 5086368 at *2 (holding that plaintiff trustee was the real party of interest where beneficiary could only advise, rather than direct, trustee's actions). This is exactly the type of authority that makes the beneficiary—rather than Plaintiff—the real party of interest. *Compare Adhami*, 2019 WL 486086 at *3 n.4 (holding that plaintiff was real party of interest where the trust agreement gave it "the power to assign, grant, transfer, pledge, mortgage and/or convey Mortgage Loans and [Real Estate Owned] Properties and other assets to any party, and to hold, manage and distribute its property and assets and any proceeds . . . (including but not limited to commencing any enforcement proceedings or actions and taking any such further action incidental thereto)") (internal quotation marks omitted).

Plaintiff's efforts to point to other provisions of the Trust Agreement in support of its argument are unpersuasive. Citing its "expansive duties," Plaintiff claims that its authority to retain possession of each mortgage file, satisfy mortgages, and execute documents necessary to satisfy mortgages evidence sufficient authority over the Trust assets. (DE 51 at 5.) But Plaintiff's postulations ignore that the beneficiary is empowered to direct Plaintiff in these matters, undercutting Plaintiff's argument. (*See* DE 38-15 at 18–20.)

---

[2] This nearly identical language undercuts Plaintiff's contention that the Trust Agreement here is distinguishable from that in *Dupre* and that "*Dupre* is irrelevant and immaterial . . . and should not be relied on." (DE 51 at 7.)

Plaintiff also selectively relies on a portion of the relevant provision in asserting that the beneficiary "shall not have any right, by virtue or by availing itself of any provisions of th[e] Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect" to the Agreement. (DE 51 at 6.) In doing so, Plaintiff offers only half the story, since the provision, in full, states that

> [t]he Beneficiary, solely by virtue of its status as Beneficiary, shall not have any right, by virtue of or by availing itself of any provision of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, *unless also* the Beneficiary shall have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder[.]

(DE 38-15 at 26 (emphasis added).) The latter portion of the provision clearly evidences the beneficiary's ability to direct the Plaintiff into litigation of its choosing. Again, this is precisely the type of control that leads to the beneficiary, not Plaintiff, being the real party in interest. *See 115 Owner LLC*, 2021 WL 5086368 at *2 (holding that plaintiff trustee was the real party in interest because it was "the only party empowered to sue on behalf of the Trust" and was "clearly the 'master of the litigation'").

In short, Plaintiff has failed to meet its burden in establishing that it is the real party in interest in this controversy. Although it spills plenty of ink pointing to provisions in the POA, the fact remains that the beneficiary maintains vast authority to direct Plaintiff to act under the terms of the Trust Agreement. In light of Plaintiff's failure to allege the citizenship of the beneficiary of the Trust, this Court concludes that it does not have subject matter jurisdiction over this dispute. As such, Defendant's motion for summary judgment based on lack of subject matter jurisdiction is granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and Defendant's

motion for summary judgment is granted.  A status conference has been scheduled for December 29, 2021

at 10:30 am to address remaining discovery, if any, on Defendant's counterclaims, and to schedule a final

pre-trial conference.

Dated:  Central Islip, New York
       December 1, 2021

**SO ORDERED:**

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

9

# EXHIBIT

# I

## NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE

Premises:     7 Fairbanks Lane, North Reading, MA 01864

By virtue and in execution of the Power of Sale contained in a certain mortgage given by Cary D. Boucher and Robin L. Boucher to Mortgage Electronic Registration Systems, Inc., as Mortgagee, as nominee for National Future Mortgage Inc., and now held by **U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT**, said mortgage dated July 28, 2008 and recorded in the Middlesex County (Southern District) Registry of Deeds in Book 51535, Page 48, as affected by Default Judgment entered September 23, 2020 and recorded in said Registry of Deeds in Book 75991, Page 487, said mortgage was assigned from Mortgage Electronic Registration Systems Inc. as nominee for National Future Mortgage, Inc. to New York Community Bank by assignment dated August 4, 2010 and recorded with said Registry of Deeds in Book 55182, Page 450; said mortgage was assigned from New York Community Bank to Nationstar Mortgage LLC by assignment dated May 25, 2011 and recorded with said Registry of Deeds in Book 56958, Page 129; said mortgage was assigned from Nationstar Mortgage LLC to U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT by assignment dated May 17, 2018 and recorded with said Registry of Deeds in Book 71030, Page 431; for breach of the conditions in said mortgage and for the purpose of foreclosing the same will be sold at **Public Auction on** April 15, 2025 at 12:00 PM Local Time upon the premises, all and singular the premises described in said mortgage, to wit:

*THE LAND IN NORTH READING, MIDDLESEX COUNTY, MASSACHUSETTS AND BEING SHOWN AS LOT NO. 7 ON A PLAN ENTITLED, "DEFINITIVE SUBDIVISION PLAN OF FAIRBANKS ESTATES", PREPARED FOR: TOWER HOMES, INC. ", BY THOMAS E. NEVE ASSCIATES, INC., ENGINEERS - SURVEYORS - LAND USE PLANNERS, DATED JUNE 1, 2001 RECORDED WITH MIDDLESEX COUNTY (SOUTHERN DISTRICT) REGISTRY OF DEEDS, PLAN NUMBER 32 OF 2002, INSTRUMENT NO. 1256 OF JANUARY 10TH, 2002.*

*BEGINNING AT A POINT ON THE SOUTHERLY SIDELINE OF FAIRBANKS LANE A THE FRONT CORNER OF LOTS 7 AND 8;*

*THENCE TURNING AND RUNNING ALONG THE SOUTHERLY SIDELINE OF FAIRBANKS LANE SOUTH 86 DEGREES 05 MINUTES 26 SECONDS EAST A DISTANCE OF 155.71 FEET TO A POINT;*

*THENCE TURNING AND RUNNING ALONG THE SOUTHERLY SIDELINE OF FAIRBANKS LANE ALONG A CURVE TO THE RIGHT HAVING A RADIUS OF 323.75 FEET A DISTANCE OF 12.50' TO A CORNER AT LOT 6;*

*THENCE TURNING AND RUNNING ALONG LOT 6 SOUTH 05 DEGREES 10 MINUTES 44 SECONDS WEST A DISTANCE OF 86.81 FEET TO A POINT;*

*THENCE TURNING AND RUNNING ALONG LOT 6 SOUTH 04 DEGREES 07 MINUTES 23 SECONDS EAST A DISTANCE OF 420.69 FEET TO A CORNER AT LAND OF NORTH HILL RECREATIONAL TRUST, LAND OF 1998 REALTY TRUST AND LOT 6;*

*THENCE TURNING AND RUNNING ALONG LAND OF NORTH HILL RECREATIONAL TRUST NORTH 63 DEGREES 25 MINUTES 09 SECONDS WEST A DISTANCE OF 238.34 FEET TO A*

B&S File No: 23-18017 FC01

CORNER AT LOT 8;

THENCE TURNING AND RUNNING ALONG LOT 8 NORTH 05 DEGREES 46 MINUTES 38 SECONDS EAST A DISTANCE OF 366.13 FEET TO A POINT;

THENCE TURNING AND RUNNING ALONG LOT 8 NORTH 16 DEGREES 32 MINUTES 18 SECONDS WEST A DISTANCE OF 48.87 FEET TO THE POINT OF BEGINNING.

MEANING AND INTENDING TO CONVEY LOT 7, CONTAINING 81, 036 SQUARE FEET OR 1.86 ACRES OF LAND AS SHOWN ON A DEFINITIVE SUBDIVISION PLAN OF "FAIRBANKS ESTATES", NORTH READING, MASSACHUSETTS, SHEET 2 OF 9, PREPARED FOR TOWER REALTY TRUST AND PREPARED BY THOMAS E. NEVE ASSOCIATES, INC. REVISED DATED OCTOBER 29, 2001

ADDRESS: 7 FAIRBANKS LANE, NORTH READING, MA 01864
MAP OR PARCEL ID NO.: 61-99

The description of the property contained in the mortgage shall control in the event of a typographical error in this publication.

For Mortgagor's Title see deed dated January 31, 2003 and recorded in the Middlesex County (Southern District) Registry of Deeds in Book 37909, Page 107.

TERMS OF SALE: Said premises will be sold and conveyed subject to all liens, encumbrances, unpaid taxes, tax titles, municipal liens and assessments, if any, which take precedence over the said mortgage above described.

FIVE THOUSAND ($5,000.00) Dollars of the purchase price must be paid in cash, certified check, bank treasurer's or cashier's check at the time and place of the sale by the purchaser. The balance of the purchase price shall be paid in cash, certified check, bank treasurer's or cashier's check within thirty (30) days after the date of sale.

Other terms to be announced at the sale.

Brock & Scott, PLLC
23 Messenger Street
2nd Floor
Plainville, MA 02762
Attorney for U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT
Present Holder of the Mortgage
(401) 217-8701

B&S File No: 23-18017 FC01

# EXHIBIT

# J

# Middlesex South Registry of Deeds

# Electronically Recorded Document

### This is the first page of the document - Do not remove

### Recording Information

| | |
|---|---|
| Document Number | : 70351 |
| Document Type | : ASM |
| Recorded Date | : May 18, 2018 |
| Recorded Time | : 03:21:40 PM |
| Recorded Book and Page | : 71030 / 431 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 2209099 |
| Recording Fee | : $75.00 |

**Middlesex South Registry of Deeds**
**Maria C. Curtatone, Register**
**208 Cambridge Street**
**Cambridge, MA 02141**
**617-679-6300**
**www.middlesexsouthregistry.com**

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage together with all interest secured thereby, all liens, and any rights due or to become due thereon to U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT, WHOSE ADDRESS IS 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage bearing the date 07/28/2008, made and executed by CARY D BOUCHER AND ROBIN L BOUCHER, mortgagor(s), to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONAL FUTURE MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS, mortgagee, and was recorded in the Office of the Register of Titles and County Recorder for MIDDLESEX SOUTH County, Massachusetts, in Book 51535 and Page 48.

Property is commonly known as: 7 FAIRBANKS LANE, NORTH READING, MA 01864.

IN WITNESS WHEREOF, this Assignment is executed by its Vice President of Loan Documentation this 17th day of May in the year 2018.
NATIONSTAR MORTGAGE LLC


HOLLY HARDY
VICE PRESIDENT LOAN DOCUMENTATION

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

FNMA1 403117096 2018-NPL1-PL2-3-SALE  MIN 100285200079940185 MERS PHONE 1-888-679-6377
MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 DOCR T171805-09:27:55 [C-1]   EFRMMA1

*D0030767609*

Loan# 1707643746

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 17th day of May in the year 2018, by Holly Hardy as Vice President of Loan Documentation of NATIONSTAR MORTGAGE LLC, who, as such Vice President of Loan Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

NICOLE SHIELDS

COMM EXPIRES: 08/05/2020



NICOLE SHIELDS
Notary Public – State of Florida
My Comm. Expires August 5, 2020
Commission # GG126925

☐ No Mortgage Broker was involved in the placing of this loan.
Mortgage Broker's Name:
Address:
License:

☐ No Mortgage Loan Originator was involved in the placing of this loan.
Mortgage Loan Originator's Name:
Address:
License:

Instrument Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
FNMA1 403117096 2018-NPL1-PL2-3-SALE  MIN 100285200079940185 MERS PHONE 1-888-679-6377
MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 DOCR T171805-09:27:55 [C-1]   EFRMMA1

 

*D00030767609*

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2581cv1818 | Massachusetts Trial Court Superior Court |
|---|---|---|
| | | COUNTY |

| Plaintiff | Defendant: U.S. BANK NA AS TRUSTEE 2017-B |
|---|---|
| Cary D. Boucher and Robin L. Boucher | ADDRESS: 60 Livingston Ave |
| ADDRESS: 7 Fairbanks Lane | St Paul, MN |
| North Reading, Massachusetts 01864 | |

| Plaintiff Attorney: n/a | Defendant Attorney: |
|---|---|
| ADDRESS: | ADDRESS: |
| | |
| | |
| BBO: | BBO: |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D03 | Injunction | F | ☐ YES   ☒ NO |

*If "Other" please describe: _____

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☐ YES   ☒ NO | ☐ YES   ☒ NO |

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

   1. Total hospital expenses _____

   2. Total doctor expenses _____

   3. Total chiropractic expenses _____

   4. Total physical therapy expenses _____

   5. Total other expenses (describe below) _____

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUL 25 2025

Subtotal (1-5): $0.00

*CLERK*

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below) _____

TOTAL (A-F): $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | The Plaintiffs seek to stop a foreclosure auction and deed the mortgage power of sale invalid | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X _____    Date: _____

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X _____    Date: _____

SC0001: 02/24    www.mass.gov/courts    Date/Time Printed:07-24-2025 09:42:11

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>2581CV01818 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Boucher, Robin L. et al vs. Merscorp Holdings, Inc. et al | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|

| TO: File Copy<br><br>, | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |
|---|---|

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                    DEADLINE

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court |  | 10/23/2025 |  |
| Response to the complaint filed (also see MRCP 12) |  | 11/24/2025 |  |
| All motions under MRCP 12, 19, and 20 | 11/24/2025 | 12/22/2025 | 01/21/2026 |
| All motions under MRCP 15 | 11/24/2025 | 12/22/2025 | 01/21/2026 |
| All discovery requests **and depositions** served and non-expert depositions completed | 05/21/2026 |  |  |
| All motions under MRCP 56 | 06/22/2026 | 07/20/2026 |  |
| Final pre-trial conference held and/or firm trial date set |  |  | 11/17/2026 |
| Case shall be resolved and judgment shall issue by |  |  | 07/26/2027 |

**The final pre-trial deadline is not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>**07/25/2025** | ASSISTANT CLERK<br>**Arthur T DeGuglielmo** | PHONE<br>**(781)939-2754** |
|---|---|---|

Date/Time Printed: 07-25-2025 14:02:34

SCV026\ 08/2018

## COMMONWEALTH OF MASSACHUSETTS

2581cv1818

WOBURN, SS.

Cary D. Boucher

Robin L. Boucher
Plaintiffs

Emergency ex parte MOTION
for INJUNCTIVE RELIEF

MERSCORP HOLDINGS, INC "MERS"

and

U.S. BANK N.A. as Trustee
For the RMAC Trust SERIES
2017-B
Defendant

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUL 25 2025

Plaintiffs, pro per request this Honorable Court for stop the
foreclosure by an party that has no authority to go forward
with an unlawful non-judicial procedure causing irreparable
harm to Plaintiffs.

CLERK

The facts of this case will prove this action is unlawful action.
Plaintiffs request a restraiing order for the sale set for July 28, 2025.

Signature _Cary D. Boucher_
Address 7 Fairbanks Lane, North Reading, MA
Phone:   978 404-1479

Cary D. Boucher, Robin L. Boucher
7 Fairbanks Lane
North Reading, Massachusetts
(978) 404-1479
rlboucher1966@gmail.com

## COMMONWEALTH OF MASSACHUSETTS

Woburn, SS.                                      Woburn Superior Court
                                                 Civil Action No. 25-

|  |  |
|---|---|
| CARY D. BOUCHER, and ROBIN L. BOURCHER | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MERSCORP HOLDINGS, Inc "MERS" | ) ) |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE RMAC TRUST, SERIES 2017-B, | ) ) ) |
| Defendants. | ) ) ). |

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

JUL 25 2025

CLERK

## EX PARTE MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER

COMES NOW ROBIN L. BOUCHER and CARY D. BOUCHER and are filing this Motion for Temporary Restraining Order as follows:

## FACTS

1. Cary's name was signed on a note and mortgage in 2008. See Exhibits A and B.

2. The note was in favor of National Future Mortgage, Inc. and MERS as Beneficiary to the Mortgage; however, MERS was not on the Note.

3. Robin L. Boucher is not a signer on the note and owes no money to Defendants, Robin L. Boucher is not responsible for personal debts of her spouse Cary D. Boucher, the

note and mortgage do not match and are not attached to each other at this time, therefore, the power of sale cannot be triggered by a default of the debt herein by Plaintiffs.

4. Although it appears an endorsement Allonge was initiated, it was never completed. It is important to note that AmTrust Bank, a separate entity, was closed by the Office of Thrift Supervision in 2009 and ONLY its deposits transferred to New York Community Bank (no assets or Promissory Notes). Exhibit C.

5. After having received only deposits transferred from AmTrust Bank to New York Community Bank an assignment of the Mortgage, WITHOUT THE DEBT, appeared recorded on 6/7/2011 in the Middlesex County Records for an assignment on 5/25/2011 to Nationstar Mortgage, LLC which in accordance with the Massachusetts statutes is a VOID assignment on its face as held *Eaton v. Federal Nat. Mortg. Ass'n, 496 Mass. 824, 15 N.E.3d 729 (2014)*. Exhibit D Assignment.

6. A "naked mortgage" is insufficient: A mortgagee (the entity holding the mortgage) who does not also hold the underlying promissory note lacks the authority to foreclose in Massachusetts.

7. The debt was insured against non-payment. In 2018 FNMA as insurer paid off the debt and publicly sold that subrogated debt entitlement in an auction. See Exhibit E.

8. The winner of the bid was Elkhorn Depositor LLC on April 24, 2018 – See Exhibit E.

9. The announcement was memorialized on a May 17, 2018 Assignment of the Mortgage, indicating on the document that it was ONLY a mortgage assignment and that there was no debt being assigned at that time. As held for MERS, in *Montgomery County, PA. v. MERSCORP, Inc*, USD, E.D. Penn, (2014) 16 F.Supp.3d 542.

10. Plaintiffs received notice of the sale of the subrogated debt from Series 2016-CTT to Trustee for 2017-B on November 20, 2023- Exhibit F.

11.  After the sale of the subrogated debt from Series 2016-CTT to Trustee for 2017-B, a notice of default from Series 2016-CTT, who did not hold entitlement to the debt was sent to Plaintiffs on March 4, 2024 Exhibit F.

12.  Subsequently, a notice of sale was issued by the same nonparty to the transaction as the fatally defective notice of default, Series 2016-CTT. See Exhibit G.

## ARGUMENT

13.  **_U.S. Bank National Association as Trustee for RMAC Trust, Series 2016-CTT v. Desrosiers,_** USD Court, E.D. New York CV 17-7338 (AKT) 3/31/2021 proves Series 2016-CTT and Trustee U.S. Bank had no authority to enforce (or to use the courts for recovery) and therefore, could never pass on any authority even if they assigned or sold the mortgage. See Exhibit H.

14. No authority exists for a foreclosure sale by Series 2016-CTT and all documents in relationship to the notices, etc are fatally defective.

15.  This has caused this TRO to be filed today in order to prevent an unlawful act and irreparable harm to Plaintiffs.

16.  The irreparable harm to Plaintiffs is the loss of a home they have built themselves, it is unique and cannot be replaced with pecuniary damages, and Plaintiffs are without any adequate remedy at law.

17. Plaintiffs are entitled to a restraining order to prevent Defendants from further actions during the pendency of this lawsuit against irreparable and on-going harm to the Plaintiffs.

18. There is no other adequate remedy at law, which necessitates injunctive relief. This is supported in Massachusetts under Massachusetts Rule of Civil Procedure 65.

19. The Complaint will likely succeed on the merits as the unlawfully recorded documents, documents that are void on their face in accordance with Massachusetts statutes, are fatally defective and will be cancelled.

20. The likelihood of success validating specifically that MERS could not transfer the promissory note is in accordance with Massachusetts Part 1, Title XV, Chapter 106, Article 9, § 9-203(b)(1) as no value was, nor could, be received by MERS for a promissory note that it did not own, hold, possess or have entitlement to enforce.

21. The likelihood of success in this action will be reinforced as on May 11, 2011 MERS "Assignment of Deed of Trust" with MERS as the nominee will be of no legal effect. On that date, MERS was no longer a nominee for National Future Mortgage Finance, Inc, its successors and assigns.

22. The likelihood of success in this action will be reinforced as on May 11, 2011 MERS "Assignment of Deed of Trust" with MERS as the nominee will be of no legal effect. On that date, MERS was no longer a nominee for National Future Mortgage Finance, Inc, its successors and assigns.

23. The likelihood of success in this action is parallel with other cases granting this relief and in line with applicable case law that no action can go forward through the use of fraudulent documents to initiate a process that otherwise is unlawful and also that the Plaintiffs have no evidence of the Note being transferred, an element that is required to perform a nonjudicial foreclosure.

24. Defendant is violating the law by attempting to initiate the Massachusetts non-judicial foreclosure scheme strictly construed pursuant to General Law - Part II, title 1, Chapter 183, § 21 in accordance with the Statutory Power of Sale. Because the Defendant is not permitted to initiate a nonjudicial sale when:

> a. the borrower is not in default to Defendant,
> b. the Defendant does not have any debt it is pursuing,
> c. the mortgage and the debt are no longer together with any note holder,
> d. Defendants have no legal basis to sell the property, and
> e. Defendants have no standing to enforce a Mortgage where the Power of Sale Is Void.

25. Plaintiffs are entitled to this remedy as there is no prejudice against the Defendant, U. S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE RMAC TRUST, SERIES 2017-B (which is a pass-through trust and has no damages at this time). Defendant MERS is not prejudiced as it never had a promissory note that was to be repaid to Defendant and it has no recoverable damage from Plaintiffs.

26. The granting of the restraining order preserves the status quo of all parties and is normal in equitable actions like these.

## CONCLUSION

In 2018, FNMA PAID OFF THE DEBT AND SOLD SUBRIGATED DEBT TO A DELAWARE STATUTORY TRUST which, along with MERS, are claiming as successors and assigns, the ability to foreclose on the Note and mortgage (which are separate in Massachusetts) by and through a Delaware Statutory Trust that already sold the subrogated debt one more time. Defendant is a pass-through investment trust, where cash flow goes to stock holders who purchased certificates of participation and they have no recoverable damages or standing to foreclose. MERS is merely an electronic recording system and has no recoverable damages at this time. MERS assignments are void as no assignments are inclusive of the debt herein.

WHEREFORE, Plaintiffs respectfully request that a Temporary Restraining Order be hereby GRANTED (See Proposed Order attached).

Date: July 25 , 2025

Respectfully submitted,

Cary D. Boucher

Robin L. Boucher
7 Fairbanks Lane
North Reading, Massachusetts
(978) 404-1479
rlboucher1966@gmail.com

#5

## Dia S Roberts-Tyler

| | |
|---|---|
| **From:** | Neil Heiger <Neil.Heiger@brockandscott.com> |
| **Sent:** | Friday, July 25, 2025 3:14 PM |
| **To:** | Dia S Roberts-Tyler |
| **Cc:** | MA_Sale; Shana Goodwin |
| **Subject:** | Boucher 7 Fairbanks Lane, North Reading, MA, foreclosure auction originally 7/29/25 canceled |
| **Importance:** | High |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Ms. Roberts,

Pursuant to our call of this date, our client has instructed our office and we can confirm that the sale originally scheduled for 7/29/25 for the above borrower and property has been canceled and is not going forward.

Thanks for your assistance.

Regards,
**Neil Heiger**
Senior Associate
Foreclosure

**BROCK&S**
**&SCOTT** PLLC
Brock & Scott, PLLC
Ph: 410-306-7821
Fx: 401-217-8702
Neil.Heiger@brockandscott.com
Licensed in: MA, RI

To opt out of future electronic communication from Brock & Scott, PLLC please click here to submit your request and have your email address removed from our records.

**Serving AL, CT, FL, GA, KY, ME, MA, MD, MI, NH, NC, NJ, OH, PA, RI, SC, TN, TX, VT, VA and WV**

**FDCPA: This firm is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. If you are a debtor in an active bankruptcy case, are under the protection of a bankruptcy stay or your personal liability for this debt has been discharged in a bankruptcy proceeding and you have not reaffirmed the debt, this communication is for informational and compliance purposes only, and we are not attempting to collect the debt from you personally.**

**CONFIDENTIALITY NOTICE:** This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

1

| SUMMONS AND ORDER OF NOTICE | DOCKET NUMBER<br>2581CV01818 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Boucher, Robin L. et al vs. Merscorp Holdings, Inc. et al | | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
| To:<br>Merscorp Holdings, Inc. | | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |

To the above named defendant(s):
    You are hereby summoned and required to serve upon:

Cary D Boucher
7 Fairbanks Lane
North Reading, MA 01864

    an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Woburn either before service upon plaintiff's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Preliminary Injunction has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

**Date: 08/07/2025**

**Time: 02:30 PM**

Event Type: In Person

**Session/ Courtroom Location:**

**Courtroom 740**

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED<br>07/25/2025 | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness:<br>Hon. Michael D Ricciuti | ASSOCIATE JUSTICE<br>Hon. Helene Kazanjian | ASSISTANT CLERK<br>X |
|---|---|---|---|

**RETURN OF SERVICE**

I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint.

PARTY NAME:

X

Date/Time Printed: 07-25-2025 16:29:53                                    SCV027\ 09/2024

| SUMMONS AND ORDER OF NOTICE | DOCKET NUMBER<br>2581CV01818 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Boucher, Robin L. et al vs. Merscorp Holdings, Inc. et al | | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
| To:<br><br>U.S. National Association as Trustee for The RMAC Trust, Series 2017-B | | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |

To the above named defendant(s):

You are hereby summoned and required to serve upon:

**Cary D Boucher**
**7 Fairbanks Lane**
**North Reading, MA 01864**

an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Woburn either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Preliminary Injunction has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

**Date: 08/07/2025**

**Time: 02:30 PM**

**Session/ Courtroom Location:**        Event Type: In Person

**Courtroom 740**

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED<br>07/25/2025 | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness:<br>Hon. Michael D Ricciuti | ASSOCIATE JUSTICE<br><br>Hon. Helene Kazanjian | ASSISTANT CLERK<br>X |
|---|---|---|---|

**RETURN OF SERVICE**

I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint.

PARTY NAME:

X

7

C

COMMONWEALTH OF MASSACHUSETTS

Middlesex, SS.

Middlesex Superior Court
C.A. No. 2581CV01818

Robin L. Boucher )
Cary D. Boucher, )
 )
      Plaintiffs, )
 )
v. )
 )
MERSCORP HOLDINGS, Inc. "MERS" )
 )
 )
U.S. Bank National Association, as Trustee for )
the RMAC Trust, Series 2017-B, )
 )
      Defendants. )
 )

RECEIVED
8/6/2025

## NOTICE OF FILING OF NOTICE OF REMOVAL

In accordance with 29 U.S.C. § 1446(d), Defendant U.S. Bank National Association, as

Trustee for the RMAC Trust, Series 2017-B, provides Notice to this Court that Defendant filed

the attached Notice of Removal with the Office of the Clerk of the United States District Court,

District of Massachusetts attached as Exhibit 1.

123055481.1

SR

Date Filed 8/6/2025 3:29 PM
Superior Court - Middlesex
Docket Number 2581CV01818

Respectfully submitted,

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE RMAC TRUST, SERIES 2017-B,**

By its attorney,

*/s/ Casey A. Sieck*
Casey A. Sieck (BBO# 678790)
csieck@daypitney.com
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
Tel.: (617) 345-4751

DATED:        August 6, 2025

123055481.1                                    -2-

Date Filed 8/6/2025 3:29 PM
Superior Court - Middlesex
Docket Number 2581CV01818

## CERTIFICATE OF SERVICE

I Casey A. Sieck, hereby certify that on this 6th day of August, I caused a copy of the foregoing to be served by first class mail upon the Plaintiffs.

Cary D. Boucher
Robin L. Boucher
7 Fairbanks Lane
North Reading, MA 01801

/s/ *Casey A. Sieck*
_____
Casey A. Sieck

123055481.1                                    -3-